**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KATY MANLEY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: |
| THE HAIN CELESTIAL GROUP, INC., | ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Katy Manley, individually and on behalf of all others similarly situated, through her undersigned counsel, alleges for her Class Action Complaint against Defendant, The Hain Celestial Group, Inc., based upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including the investigation conducted by her counsel as follows:

### NATURE OF THE ACTION

1.      Plaintiff Katy Manley ("Plaintiff") brings this putative class action against The Hain Celestial Group, Inc. ("Hain Celestial" or "Defendant").

2.      Defendant manufactures, sells, and distributes certain of its Alba Botanica brand sunscreen using deceptive and misleading labeling.

3.      Specifically, this action seeks to remedy the unfair and deceptive business practices arising from the marketing and sale of Defendant's "Alba Botanica Very Emollient Mineral Spray Sunscreen" (the "Product" or "Alba Botanica Sunscreen").

4.      Defendant misrepresents that its Product provides adequate sun protection.

5.     Defendant makes false and misleading claims on the label of the Product. These false and misleading claims include, but are not limited to, statements regarding the proper application of the Product as alleged more fully herein.

6.     As a result of this practice, the Product contains significantly less protection than advertised, by design and corporate practice and procedure.

7.     But for Defendant's misrepresentations, Plaintiff and similarly situated purchasers of the Product would not have purchased or paid the price they did for the Product.

8.     The above-described practices, alleged in further detail below, give rise to Plaintiff's and the putative class' claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count I), breach of warranty (Count II), breach of implied warranty of merchantability (Count III), breach of implied warranty of fitness for a particular purpose (Count IV), negligent misrepresentation (Count V), and unjust enrichment (Count VI).

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), as this is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which members of the class, which number in excess of 100, are citizens of states different from Defendant.

10.     Jurisdiction over Defendants is proper under 735 ILCS 5/2-209(b)(4) (corporation doing business within this State), and Section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States).  735 ILCS 5/2-209(b)(4), and (c).

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

12.     Plaintiff, Katy Manley ("Plaintiff" or "Ms. Manley"), is a natural person domiciled in Lake Forest, Illinois.  Plaintiff is a member of the putative class defined herein.

13.     Defendant The Hain Celestial Group, Inc. is a corporation organized and existing under the laws of the State of Delaware with its headquarters and principal place of business in Lake Success, New York. Hain Celestial is an organic and natural products company which participates in almost all natural categories with well-known brands, including Alba Botanica. Hain Celestial manufactures its Alba Botanica brand products in Culver City, California.

## BACKGROUND

14.     Consumers, like Plaintiff and the putative class members, buy sunscreen to prevent sunburns and other harmful health effects caused by exposure to UV radiation. Sunscreen prevents burning and decreases skin's exposure to UV radiation by absorbing UV radiation on the skin or by reflecting or scattering all or part of the UV radiation away from the skin.

15.     Alba Botanica is a brand of body, facial, hair and sun care products manufactured and marketed by Hain Celestial and sold in drugstores, grocery stores, and online.

16.     Alba Botanica Very Emollient Mineral Spray SPF 35 Sunscreen (the "Product") is manufactured, labeled, sold, and distributed by Defendant at all time relevant to this complaint.

17.     The Product is available online and in hundreds of retail stores, including but no limited to Amazon.com, TJ Maxx, and Walmart.

18.     The Product is advertised as a mineral-based sunscreen.

19.     On Alba Botanica's website and Amazon, the Product is now sold in new packaging labeled as "Alba Botanica Refreshing Mineral Spray SPF 35 Sunscreen." This "Refreshing" sunscreen and the Product are virtually identical and contain the same formulation.

20.     The "Refreshing" sunscreen has an updated "Directions" label that states to "SHAKE VIGOROUSLY for 10 seconds before use," and specifically instructs to "blend well into skin with hand." The Product lacks these application directions.

21.     Alba Botanica's website sets forth that the Product is sold in a six-fluid ounce spray bottle and boasts the following:

> Broad spectrum mineral sunscreen protection is *easily applied* with this air-powered, earth-friendly spray. Fragrance free formula *helps protect against sunburn, skin cancer and premature signs of aging* and is ideal for sensitive skin. Can conveniently be sprayed on at any angle and rubs in fast. Free of oxybenzone, octinoxate, PABA, nano-sunscreens and Vitamin A. Alba Botanica® sunscreens are free of active ingredients that may harm coral reefs.[1]

### DEFENDANT'S UNIFORM WRITTEN MISREPRESENTATIONS

22.     According to the American Academy of Dermatology, applying sunscreen incorrectly can leave skin vulnerable to damaging UV radiation, increase risk of skin cancer, and enhance the development of skin aging signs like lines and wrinkles. Proper application of sunscreen plays a vital role in sun protection.[2]

23.     Since the initial offering of the Product, each and every container of this product has borne a uniformly-worded label which identifies the name of the product in large letters on

---

[1] *See sensitive mineral sunscreen,* ALBABOTANTICA.COM, https://www.albabotanica.com/en/products/sensitive-mineral-sunscreen-al00404-master (last visited Oct. 15, 2018) (emphasis added).

[2] *See The Right Way to Wear Sunscreen,* CONSUMERREPORTS.ORG, https://www.consumerreports.org/sunscreens/right-way-to-wear-sunscreen (last visited Oct. 15, 2018).

the front as "very emollient mineral sunscreen" and "SPF 35"[3] as depicted in the image below.



24.     Furthermore, since the initial offering of the Product, each and every container of this product has borne a uniformly-worded label on the back which identifies the "Directions" for use.

25.     In particular, the "Directions" on the Product state to "SHAKE WELL before use," but the label fails to warn the consumer about either the importance of shaking the product vigorously for at least ten seconds and blending the Product well into the skin after spraying it on as one would with traditional, non-spray sunscreen lotion.

26.     At no time did Defendant advise either Plaintiff or putative class members that their sunscreen provided less sun protection than Defendant otherwise advertised if not properly applied.

---

[3] The sun protection factor (SPF rating, introduced in 1974) is a measure of the fraction of sunburn-producing UV rays that reach the skin. A user can determine the effectiveness of a sunscreen by multiplying the SPF factor by the length of time it takes for him or her to suffer a burn without sunscreen." Thus, if a person develops a sunburn in 10 minutes when not wearing a sunscreen, the same person in the same intensity of sunlight will avoid sunburn for 150 minutes if wearing a sunscreen with an SPF of 15.

27.     As a result of Defendant's pattern and practice of omitting material facts on the Product's labeling, Plaintiff and the putative class members have been, and continue to be, injured.

28.     In purchasing the Product, Plaintiff and the class members had no choice but to necessarily and justifiably rely upon the written statements on the Product as accurate.

29.     The Amazon website, which provides a forum for consumers to post reviews of their experiences with a product, includes hundreds of complaints from consumers regarding the alleged practices set forth herein.  *See Alba Botanica Herbal Fresh Spray Refreshing Mineral SPF Sunscreen, 6 Ounce, Customer Reviews,* Amazon, https://www.amazon.com/Alba-Botanica-Refreshing-Mineral-Sunscreen/product-reviews/B000Z8VLPU/ref=cm_cr_othr_d_show_all_btm?ie=UTF8&reviewerType=all_reviews (last visited October 22, 2018). Examples of such complaints appear below (errors in original):

**Selina on October 4, 2018**

This product goes on like white face paint. Yes, you will look like a ghost. And its not easy to blend into your skin. I requested a refund. Not happy with this product at all.

**stephanie on September 2, 2018**

I was very excited to get this product. But when I spray it it sprays little round circles on my skin. I tried shaking it, holding it differently and it still just sprays unevenly with little circles that you have to rub in. I stopped using it, might be too old or had sat in the heat somewhere. I don't want to put anything on my skin that looks unhealthy. Really disappointed because the ingredients are actually what I wanted to put on my skin.

**David on August 28, 2018**

Do not buy, unless you enjoy having blobs of sunscreen all over you, your car, your clothes, your kids, and your dog... which doesn't easily wipe off. Seriously, you've been warned.

**MaryFaith on August 7, 2018**

The spay worked once, the second time I used it, it came out a white thick consistency that was very difficult to rub in.

**A Shopper on July 24, 2018**

I wanted to love this because of its ingredients being so much better than the average product and that it's reef safe but it's very difficult to rub into skin and it leaves a white hue afterward. What was the worst was that it's EXTREMELY difficult to wash off. I keep scrubbing with a rough wash cloth and soap but 2 days later, I can still feel the sticky residue on my skin. Even my clothes are sticking to me!

**Emily Hickman on July 4, 2018**

If I could give this 0 stars, i would. It is so thick that my husband and I used half the bottle with just our first application. We reapplied two more times in a four hour span at the beach. We had to leave early because we knew we were burning. It's the day after and we are spending our vacation sitting inside because we are in so much pain and cannot face the sun. Vacation. Ruined.

**Fitz Mom on May 9, 2018**

Item was shipped very quickly but wasn't a good sunblock for us. My husband broke out in a rash and I burned using this.

**ANGELA on July 14, 2017**

This sunscreen does not work. Both times I used it, I burned on my shoulders and face. I would highly discourage this purchase.

**Collin Farnsworth on July 2, 2017**

This sunscreen is so thick and sticky it is impossible to spread on well. We ended up getting burnt even in places we knew sunscreen was liberal applied! Don't buy this product!

**johnny5 on June 28, 2017**

Don't. Just don't. Whole family got burned.

**MsB on June 13, 2017**

This sunscreen did not work for me. I applied it and went kayaking and got sunburned. I've never had a sunscreen be so ineffective. I'm going to try Blue Lizard mineral sunscreen instead. At 7 bucks this one was overpriced.

**Rebecca on December 29, 2016**

We used this and applied twice in a 3 hour period, didn't work that well. We bought it since it was reef safe and we were snorkeling near reef. We did apply and wait about 10 minutes to let it have time to seep into our skin. My husband, daughter and I still burned though :(

**Amazon Customer on July 21, 2016**

Absolutely horrible- first day I got it I put it on at the beach and it came out clear and felt like water (even after shaking it) and ended up burning!! I decided to give it another try today and this time it came out white and stuck onto my skin and would not rub in AT ALL! It basically stained my skin and black bathing suit white and it wouldn't come off until I scrubbed myself with soap in the shower. DO NOT TRY THIS!!

**super shopper on June 9, 2012**

I lathered my 10 month old up in the sunscreen about 20 minutes before taking her out to her baby pool. About 15 minutes after being outside, I noticed her skin looked really pink. I immediately took her inside and was horrified to see that she was completely burned on her back and arms! I have never written a review before but I am just so upset! I sincerely hope that this was a bad bottle or else there are going to be a lot of sunburned people around.

30.     All of Plaintiff's state law claims are based on misleading statements that violate FDA regulations. Such claims do not seek to impose any additional or different obligations beyond those already required by such FDA regulations.

31.     Such parallel state claims alleging affirmative violations of FDA regulations are expressly permitted by 21 U.S.C. §343-1(a).

## FACTS RELATING TO PLAINTIFF

32.     On or about May 7, 2018 Plaintiff purchased the Product from TJ Maxx in Northbrook, Illinois for $9.99.

33.     On or about May 28, 2018, Plaintiff applied and reapplied the Product as instructed on the label but was unaware of the need to shake the product vigorously for at least ten seconds and to blend it well into her skin after applying it.

34.     As a direct and proximate result of the foregoing, the Product did not provide adequate protection from the sun causing severe sunburn.

35.     Had Plaintiff known at the time of purchase that the Product did not provide adequate sun protection even when used as directed, she would not have purchased it.

## CLASS ACTION ALLEGATIONS

36.     This action satisfies the prerequisites for maintenance as a class action provided in Fed. R. Civ. P. 23(a), as set forth below.

37.     *Class Definition.*  Plaintiff brings this action individually and on behalf of the following class of similarly situated persons (the "Class"), of which Plaintiff is a member:

> All natural persons domiciled in the United States or its territories who purchased Alba Botanica Very Emollient Mineral Spray Sunscreen SPF 35 or substantially similar Alba Bontanica spray sunscreen products.

Excluded from the Class is Defendant and any of its respective officers, directors or employees, the presiding judge, Class counsel and members of their immediate families, and persons or entities who timely and properly exclude themselves from the Class.

38.     *Illinois Sub-Class.*  In the alternative, Plaintiff brings this action individually and on behalf of a sub-class of Illinois consumers only who are members of the above-defined class.

- 9 -

39.    *Numerosity.*   The members of the Class are so numerous and geographically dispersed throughout the United States such that joinder of all members is impracticable.  Plaintiff believes that there are thousands of persons in the Class.  The exact number and identity of Class members is unknown to Plaintiff at this time and can only be ascertained from information and records in the possession, custody or control of Defendants.

40.    *Commonality.*   There are questions of law or fact common to the Class including, *inter alia*, the following:

      a.    whether the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, applies to the claims of Plaintiff and members of the Class and/or entitles them to relief;

      b.    whether Defendant's labeling, marketing, advertising, and promotion of its Product was false and misleading;

      c.    whether Defendant's conduct constitutes breach of express warranty;

      d.    whether Defendant's conduct constitutes breach of the implied warranty of merchantability;

      e.    whether Defendant's conduct constitutes breach of implied warranty of fitness for a particular purpose;

      f.    whether Defendant's conduct constitutes negligent misrepresentation;

      g.    whether Plaintiff and the Class conferred a benefit on Defendant and whether it would be unjust for it to retain such benefits under the circumstances alleged herein;

      h.    whether the Court has subject matter jurisdiction and whether venue in this district is proper;

i.    whether Plaintiff and the members of the Class are entitled to their damages, including treble damages, and the appropriate measure thereof; and

j.    whether equitable or injunctive relief is appropriate.

41.    *Typicality.*  The claims of Plaintiff are typical of the claims of the Class alleged herein.  Plaintiff and other members of the Class are all persons who purchased Alba Botanica Very Emollient Mineral Spray Sunscreen SPF 35 and relied on the same, identical false, written statement of affirmative fact.

42.    *Adequacy.*  Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who are competent and experienced in the prosecution of complex and class action litigation.  The interests of Plaintiff are aligned with, and not antagonistic to, those of the Class.

43.    *Fed. R. Civ. P. 23(b)(2) Requirements.*  The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist, as Defendant has acted or has refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

44.    Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

45.    Defendant's uniform common course of conduct alleged herein makes declaratory relief with respect to the Class as a whole appropriate.

46.    *Fed. R. Civ. P. 23(b)(3) Requirements.*  This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3).  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

47.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for individual Class members.

48.     This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class.

## COUNT I

**(Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*)**

49.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 48, *supra*, as though fully stated herein.

50.     This Count is brought on behalf of Plaintiff and other Illinois Class members and on behalf of those Class members from other states that have enacted a uniform deceptive trade practices act in the same or substantially similar form as that described herein.

51.     At all times material hereto, there was in full force and effect an act commonly known as the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA").

52.     Section 2 of ICFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use of employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act'

- 12 -

[815 ILCS 510/2], approved August 5, 1965, in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

53. At all times material hereto, there was in full force and effect in this State an act commonly known as the Uniform Deceptive Trade Practices Act ("UDAP"), 815 ILCS 510/2 *et seq.*, incorporated by reference in Section 2 of ICFA, *supra*.

54. The aforesaid acts and practices of Defendant constitutes unfair or deceptive acts or practices prohibited by Section 2 of ICFA, including but not limited to the use or employment of deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of material fact, with intent that Plaintiff and the Class rely thereon. *See* 815 ILCS 505/2.

55. The aforesaid acts and practices of Defendants further fall within the practices prohibited by Section 2 of the Uniform Deceptive Practices Act incorporated by reference in 815 ILCS 505/2, *supra*.

56. Defendant's unfair and deceptive practices, including the omission of material facts in the Product's labeling are likely to mislead – and have mislead – the consumer acting reasonably in the circumstances, and violate 815 ILCS 505/2. This includes misleading Plaintiff and the Class.

57. Plaintiff and members of the Class have been aggrieved by Defendant's unfair and deceptive practices in that they purchased the product, which they would not have purchases or would not have paid as much for had they known the true facts.

58. The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendant, as more fully described herein.

59.     As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT II

### (Breach of Warranty)

60.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 48, *supra*, as though fully stated herein.

61.     Defendant sold the Product in their regular course of business. Plaintiff and the class members purchased the Product.

62.     Defendant made promises and representations in an express warranty provided to all consumers, namely that their Alba Botanica sunscreen provides sun protection when used as directed, which became the basis of the bargain between Defendant and Plaintiff and each class member.

63.     Defendant gave this express warranty to Plaintiff and each class member in written form on the label of the Product.

64.     Defendant's written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty.

65.     Defendant breached the warranty because the uniform written statement on each container of the Product, omitted material facts regarding application of the Product, and the Product did not contain the properties Defendant represented.

66.     The information provided on the label was deceptive when the sale took place and was undiscoverable to Plaintiff and the class members at the time of purchase.

67.     Further, Defendant previously knew or should have known of the deceptiveness of the label on the Product, due to, *inter alia*, Defendant's testing of the product.

68.     Defendant has refused or failed to remedy such breaches.

69.     By placing the Product in the stream of commerce, and by operation of law and the facts alleged herein, Defendant also warranted to Plaintiff and class members that the sunscreen was accurately labeled in conformance with the law.

70.     Defendant's breach of warranty has caused Plaintiff and class members to suffer injuries, by paying too much for deceptively labeled products that did not perform as warranted, and entering into transactions they would not have entered into for the consideration paid.

71.     As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT III

### (Breach of Implied Warranty of Merchantability)

72.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 48, *supra*, as though fully stated herein.

73.     Defendant, as the manufacturer, distributer, and/or seller impliedly warranted that the Product provided sun protection when used as directed.

74.     Defendant breached the implied warranty of merchantability in selling its Product because the goods were not of fair or average quality within the description and the goods were not fit for their intended and ordinary purpose due to the labeling omission. As a result, Plaintiff and the Class did not receive the goods as impliedly warranted by Defendant to be merchantable.

75.     Plaintiff and the Class purchased the Product in reliance upon Defendant's representations, skill, and judgment and the implied warranties of fitness for that purpose.

- 15 -

76.     At the time of sale of the Product, Defendant knew, should have known, or was reckless in not knowing of its misrepresentation that the Product would not safely perform as warranted.

77.     As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT IV

### (Breach of Implied Warranty of Fitness for a Particular Purpose)

78.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 48, *supra*, as though fully stated herein.

79.     By operation of law, there existed an implied contract for the sale of the Product between Defendant and each Plaintiff and class member who purchased the Product.

80.     Defendant marketed, distributed, and/or sold the Product with implied warranties that it was fit for its intended purpose in that the Product provided adequate sun protection. At the time that the Product was sold, Defendant knew or had reason to know that Plaintiff and the Class members were relying on Defendant's skill and judgment to select or furnish a product that was suitable for sale.

81.     Plaintiff and the Class members bought the Product in reliance on Defendant's implied warranties.

82.     As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT V

### (Negligent Misrepresentation)

83.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 48, *supra*, as though fully stated herein.

84.     At all relevant times, Defendant engaged in the business of designing, manufacturing, testing, marketing, labeling, distributing and placing into the stream of commerce the Product for sale to, and use by, members of the public.

85.     Defendant, as the manufacturer, distributer, and/or seller represented that the Product provided sun protection.

86.     In fact, Defendant's representation about its Product was false. The Product does not provide adequate sun protection.

87.     Defendant knew or should have known of the defective condition, characteristics, and risks associated with said product, as previously set forth herein. Defendant negligently disregarded this increased risk of harm by failing to warn of such risks by failing to ensure distribution of required application directions; unlawfully concealing the dangerous problems associated with improper use of the Product; and continuing to market, promote, sell and defend such use of the Product.

88.     Defendant owed its customers, including Plaintiff and the Class, a duty to refrain from providing them with false and misleading information.

89.     Defendant breached that duty, by misrepresenting the amount of sun protection in its Product to Plaintiff and the Class and/or omitting material facts about application of the Product.

90. These negligent misrepresentations, upon which Plaintiff and the Class reasonably and justifiably relied, were intended to induce them and actually did induce them to purchase the Product.

91. Plaintiff and the Class would not have purchased the Product, or would not have paid the price they did, if the true facts had been known.

92. As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT VI

### (Unjust Enrichment)

93. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 48, *supra*, as though fully stated herein.

94. Plaintiff and the Class members have conferred substantial benefits on Defendant by purchasing the Product, and Defendant has knowingly and willingly accepted and enjoyed these benefits.

95. Defendant either knew or should have known that the payments rendered by Plaintiff and the Class members were given and received with the expectation that the Product would be as represented and warranted.

96. Through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of the Product, including omitting that the Product had to be shaken vigorously and blended well into the skin, Defendant reaped benefits, which resulted in Defendant wrongfully receiving profits.

97. Plaintiff and the members of the class would not have purchased the sunscreen had they been fully informed regarding the above-referenced policies and procedures.

98. Defendants' acceptance and retention of the aforesaid benefits under the circumstances alleged herein would be inequitable absent the repayment of such amounts to Plaintiff and the Class.

99. As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, prays for judgment in their favor and against Defendant and for the following relief:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, certifying the Class defined herein and designating Plaintiff as representative of the Class and her undersigned counsel as Class counsel;

B. Awarding Plaintiff and the Class (1) their actual damages, (2) such treble damages as the Court may allow, and (3) the costs of this action together with reasonable attorneys' fees as determined by the Court;

C. Awarding Plaintiff and the Class all allowable pre- and post-judgment interest on the foregoing awarded damages;

D. Awarding Plaintiff and the Class equitable relief including, *inter alia*, disgorgement of Defendants' ill-gotten gains;

E. Granting appropriate injunctive and declaratory relief; and

F. Awarding such other and further available relief and any other relief the Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Date:  October 23, 2018

Respectfully submitted,

KATY MANLEY

By:     s/ William M. Sweetnam

William M. Sweetnam
Natasha Singh
SWEETNAM LLC
100 North La Salle Street, Suite 2200
Chicago, Illinois  60602
(312) 757-1888
wms@sweetnamllc.com
ns@sweetnamllc.com

*Attorneys for Plaintiff and the Class*