# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KATY MANLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18 C 7101 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| HAIN CELESTIAL GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Feeling defrauded by a sunscreen label that directed her to "SHAKE WELL" rather than "SHAKE VIGOROUSLY for 10 seconds," plaintiff Katy Manley ("Manley") filed against defendant Hain Celestial Group, Inc. ("Hain") a six-count complaint asserting claims for violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, breach of express and implied warranties, negligent misrepresentation and unjust enrichment.[1] Defendant moves to dismiss. For the reasons set forth below, the Court grants the motion to dismiss.

---

[1] The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(d)(2). Plaintiff has alleged that there are "thousands" of class members (Complt. ¶ 39) and that the amount in controversy exceeds $5,000,000.00 (Complt. ¶ 9). Named plaintiff Manley is a citizen of Illinois (Complt. ¶ 12), and defendant is a citizen of Delaware (its state of incorporation) and New York (the location of its principal place of business) (Complt. ¶ 13). Thus, at least one plaintiff is "a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

I.  **BACKGROUND**

The following facts are from plaintiff's complaint, and the Court takes them as true.

On May 7, 2018, plaintiff paid $9.99 at TJ Maxx for a bottle of "Alba Botanica Very Emollient Mineral Spray Sunscreen" (the "Product"), which was manufactured by defendant. The label on the front of the Product said, "SPF 35." The label on the back of the Product included "Directions," which stated, "SHAKE WELL before use." (Complt. ¶ 25). Plaintiff alleges the label failed "to warn the consumer about . . . the importance of shaking the product vigorously for at least ten seconds and blending the Product well into the skin after spraying it on as one would with traditional, non-spray sunscreen lotion." (Complt. ¶ 25).

Plaintiff also alleges that defendant's website states the following with respect to the Product:

> Broad spectrum mineral sunscreen protection is *easily applied* with this air-powered, earth-friendly spray. Fragrance free formula *helps protect against sunburn, skin cancer and premature signs of aging* and is ideal for sensitive skin. Can conveniently be sprayed on at any angle and rubs in fast.

(Complt. ¶ 21) (emphasis in original).

On May 28, 2018, plaintiff "applied and reapplied the Product as instructed on the label but was unaware of the need to shake the product vigorously for at least ten seconds and to blend it well into her skin after applying it." (Complt. ¶ 33). Plaintiff suffered severe sunburn. Plaintiff alleges that "[h]ad [she] known at the time of purchase that the Product did not provide adequate sun protection even when used as directed, she would not have purchased it." (Complt. ¶ 35).

Plaintiff alleges that the Product has received "hundreds of complaints" in reviews on Amazon.com. (Complt. ¶ 29). In Amazon.com reviews, people complained that, among other

things, the product "goes on like white face paint" and that their skin burned while using the product.[2]

At some point after plaintiff purchased the Product, defendant changed the label it uses on Alba Botanica Very Emollient Mineral Spray Sunscreen. The new label contains different directions. Specifically, the new directions say, "SHAKE VIGOROUSLY for 10 seconds before use." (Complt. ¶ 20).

Based on these allegations, plaintiff asserts six claims, and defendant moves to dismiss them all.

## II.     STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as

---

[2] The Court assumes plaintiff's counsel, by putting these allegations in the complaint and by relying on the content of the reviews in the brief (pages 10-11), has complied with their obligations under Rule 11(b)(3) ("By presenting to the court a pleading, written motion or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, *formed after inquiry* reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]) (emphasis added).

they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, the "circumstances constituting fraud" must be alleged with particularity. Fed.R.Civ.P. 9(b).

**III.    DISCUSSION**

    **A.    Plaintiff's claims for consumer fraud and unjust enrichment**

In Count I, plaintiff asserts that defendant violated the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1 et seq. To state a claim, plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 180 (Ill. 2005).

Defendant moves to dismiss, and plaintiff, in her response brief, clarifies what her claim is and what it is not. "[T]his case is about Defendant's practice of omitting material facts,"

4

namely "that the sunscreen would not provide adequate protection unless the consumer takes the unusual step of *vigorously* shaking the aerosol aluminum bottle for at least ten seconds." (Plf. Brief at 1). Plaintiff notes the case is not about rubbing the product into the skin. Specifically, she states, "no amount of rubbing after the product is applied would prevent burns if the product is not properly mixed before it is sprayed." (Plf. Brief at 2). Plaintiff's claim is that defendant violated the ICFA by omitting from its label the fact that the product needed to be shaken vigorously for ten seconds in order to work. (Plf. Brief at 3 ("This case is about an omission of material fact, which is actionable under the ICFA.") and 4 ("Plaintiff's claim is that if the product is not shaken properly it is ineffective")).

Defendant moves to dismiss the ICFA claim, arguing plaintiff has not alleged that the omitted information was material and arguing the omission is not deceptive. An omission is material only "where a buyer would have acted differently knowing the information." *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 505 (Ill. 1996). In *Connick*, where plaintiff had alleged defendant failed to disclose safety problems of which it was aware, the omission was material because plaintiff "would not have purchased the vehicles if [defendant] had disclosed the [product's] safety risk." *Connick*, 174 Ill.2d 505.

Here, plaintiff argues that she has alleged materiality by alleging "[h]ad [she] known at the time of purchase that the Product did not provide adequate sun protection even when used as directed, she would not have purchased it." (Complt. ¶ 35). That allegation does not make the alleged omission material, though, because the alleged omission is different. Plaintiff is not claiming defendant should have said on its label, "This product does not work when used as directed." Nor is she claiming defendant omitted entirely directions to shake the Product before use. Instead, plaintiff alleges that the Product she purchased contained directions to "SHAKE

5

WELL before using." The alleged omission is that a consumer must "SHAKE VIGOROUSLY for ten seconds." For the alleged omission to have been a material omission, plaintiff must allege she would not have purchased the product had she known she would need to "SHAKE VIGOROUSLY for ten seconds before using." She has not so alleged.

Nor has plaintiff alleged defendant intended her to rely on the alleged deception, which is the second element of her ICFA claim. *Avery*, 216 Ill.2d at 180. Plaintiff has not plausibly alleged that defendant intended consumers to rely on the "SHAKE WELL" language. Plaintiff's theory seems to be that there is a vast difference between the two directions at issue in this case. Plaintiff seems to think that a consumer is willing to purchase a product that requires her to "SHAKE WELL" but that to require her to "SHAKE VIGOROUSLY for ten seconds" is a bridge too far. Her theory seems to be that defendant must have intended consumers to rely on "SHAKE WELL," because, if defendant had told consumers instead that they must "SHAKE VIGOROUSLY for ten seconds," consumers would not have purchased the sunscreen. Equally conceivable,[3] though, is that defendant wanted to provide clear directions, because it wanted consumers to purchase not just the first bottle, but many bottles in years to come. If, as plaintiff alleges, the product works properly only if shaken properly, then defendant had a strong incentive to give clear directions. Although surely some products exist that a consumer need purchase only once in her lifetime, sunscreen is not one of those products. Unless the sun stops shining, a person who needs sunscreen will generally continue to need it in the future. This means defendant had an incentive to direct consumers accurately as to the necessity of shaking. If consumers have trouble getting the product to perform properly, they will stop buying it. If

---

[3] Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

the product works well, they may keep buying it.  After all, the purpose of branding a product is to make it easier for consumers to search for (and continue to purchase) a product.  *See Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 739 (7th Cir 2013) ("Once the [brand's] reputation for [quality] is created, the firm will obtain greater profits because repeat purchases and word-of-mouth endorsements will add to sales and because consumers will be willing to pay a higher price in exchange for a savings in search costs and an assurance of consistent quality.").  Plaintiff has not plausibly alleged defendant intended consumers to rely on having only to "SHAKE WELL," so they would not be put off by the requirement that they "SHAKE VIGOROUSLY for ten seconds."

Plaintiff's claim is that whatever daylight exists between the directions defendant gave her ("SHAKE WELL") and what defendant gives now ("SHAKE VIGOROUSLY for ten seconds") constitutes fraud.  The Court does not agree.  The difference between the two directions is, at best, that the first direction is a succinct version of the second, which is to say easier to fit on a label.  At worst, the difference is that the first is insufficiently specific, which is not actionable under the ICFA.  *Toulon v. Continental Casualty Co.*, 877 F.3d 725, 740 (7th Cir. 2017) ("[A]t worst, . . . [defendant] could have given applicants more detailed information.  This is not sufficient to state a claim under ICFA."); *Phillips v. DePaul Univ.*, 385 Ill. Dec. 823, 834 (1st Dist. 2014) (no claim under ICFA where defendant's information "could certainly have been more specific" but where defendant made "no affirmative misrepresentation").

Defendant's motion to dismiss is granted as to Count I.  Count I is dismissed with prejudice.

In Count VI, plaintiff seeks relief for unjust enrichment.  In that claim, too, plaintiff seeks relief for defendant's "omitting that the Product had to be shaken vigorously."  (Complt. ¶ 96).

The Seventh Circuit has held that, where a party fails to state a claim under the ICFA, she necessarily fails to state a claim for unjust enrichment. *Toulon*, 877 F.3d at 741-42 ("We agree with the district court that [plaintiff] failed to state a claim for unjust enrichment because she failed to state a claim for fraud or for violation of the ICFA."). Thus, the Court also dismisses Count VI with prejudice.

### B. Negligent misrepresentation

In Count V, plaintiff asserts a claim for negligent misrepresentation. Plaintiff alleges defendant "fail[ed] to ensure distribution of required application directions[,] unlawfully concealing the dangerous problems associated with improper use of the Product." (Complt. ¶ 87).

As defendant points out, plaintiff's claim is barred by the *Moorman* doctrine, i.e., the economic loss doctrine. *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 88 (Ill. 1982) ("[T]he UCC provides the proper framework for a purchaser's recovery of economic losses. Allowing an aggrieved party to recover under a negligence theory for solely economic damages would constitute an unwarranted infringement upon the scheme provided by the UCC."). As the Illinois Supreme Court has explained:

> The *Moorman* doctrine is intended to preserve the distinction between tort and contract. . . . In essence, the economic loss, or commercial loss, doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations.

*Sienna Court Condominium Assoc. v. Champion Aluminum Corp.*, 129 N.E.3d 1112, 1119 (Ill. 2018) (citations omitted). Here, plaintiff seeks relief for disappointed commercial expections: her sunscreen did not perform as she expected, and she wants her money back. Thus, her claim is barred by the *Moorman* doctrine.

Illinois recognizes an exception to the *Moorman* doctrine for negligent misrepresentation by "one who is in the business of supplying information for the guidance of others in their business transactions." *Moorman*, 91 Ill.2d at 89 (citing *Rozny v. Marnul*, 43 Ill.2d 54 (1969)). Plaintiff does not argue that defendant is in the business of providing information. Nor could she. An allegation that a supplier of tangible goods provided information ancillary to the sale of a product would not suffice. *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill.2d 326, 339 (Ill. 2006) ("The focus of the negligent misrepresentation exception to the economic loss doctrine must be on whether the defendant is in the business of supplying *information* as opposed to providing something tangible. . . . In short, the negligent misrepresentation exception to the *Moorman* doctrine is not applicable if the information supplied is merely ancillary to the sale of a product.") (citing *Fireman's Fund Ins. Co. v. SEC Donahue, Inc.*, 176 Ill.2d 160, 168-69 (Ill. 1997)).

Instead, plaintiff argues she falls within an exception to the *Moorman* doctrine, because she has alleged a physical injury: that she was sunburned. Plaintiff is correct that Illinois recognizes an exception to the *Moorman* doctrine "where the plaintiffs sustained damage, *i.e., personal injury or property damage*, resulting from a sudden or dangerous occurrence." *In re: Chicago Flood Lit'n*, 176 Ill.2d 179, 199 (Ill. 1997) (emphasis in original) (citing *Moorman*, 91 Ill.2d at 86). That exception, however, is inapplicable here, because plaintiff is not seeking relief for her sunburn. She seeks as damages the cost of the product (or the lesser price one might have paid had one known about the ten-second shaking requirement). (Complt. ¶ 91) ("Plaintiff and the Class would not have purchased the Product, or would not have paid the price they did, if the true facts had been known."). Plaintiff's remedy is in contract, rather than tort law. *Moorman*, 91 Ill.2d at 86 ("Our conclusion that qualitative defects are best handled by contract, rather than

tort, law applies whether the tort theory involved is strict liability or negligence. Tort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence of the nature described above. The remedy for economic loss, loss relating to purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause, on the other hand, lies in contract.").

Accordingly, defendant's motion to dismiss is granted as to Count V. Count V is dismissed with prejudice.

### C.     Breach of implied warranty

In Count III, plaintiff asserts a claim for breach of implied warranty of merchantability, and in Count IV, plaintiff asserts a claim for breach of implied warranty of fitness for a particular purpose.

"Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is *implied in a contract for their sale* if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314(1) (emphasis added). To be merchantable, goods "must be . . . fit for the ordinary purposes for which such goods are used." 810 ILCS 5/2-314(2)(c). An implied warranty for particular purpose is different. "Where the seller *at the time of contracting* has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." 810 ILCS 5/2-315 (emphasis added). The comments to the UCC describe the difference between these two types of implied warranties:

> A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily

> made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

810 ILCS 5/2-315, Comment 2.

The statutes for both implied warranties refer to contracts, and, under Illinois law, a claim for breach of implied warranty is a contract claim requiring privity of contract. *Szajna v. General Motors Corp.*, 115 Ill.2d 294, 311 (Ill. 1986) ("The line of demarcation between nonprivity and privity is best left at the point defined in *Moorman* between economic loss and noneconomic loss. . . . We therefore decline to abolish the privity requirement in implied-warranty economic-loss cases."); *see also Rothe v. Maloney Cadillac, Inc.*, 119 Ill.2d 288, 292 (Ill. 1988) ("In *Swajna*, we extensively discussed the UCC's implied warranties. We concluded that, with respect to purely economic loss, the UCC article II implied warranties give a buyer of goods a potential cause of action only against his immediate seller. In reaching this conclusion we particularly noted the UCC section 2-607 notice provisions, all of which clearly contemplate a buyer-seller relationship. . . . Because there was no buyer-seller relationship between the parties in the *Swajna* decision, we held that the plaintiff could not recover purely economic losses under a UCC article II implied warranty theory."); *Voelker v. Porsche Cars North Amer., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) ("Under the law of Illinois, privity of contract is a prerequisite to recover economic damages for breach of implied warranty. Therefore, because it is undisputed that [plaintiff] lacks privity of contract with [defendant], this claim against [defendant] was properly dismissed."). In *Swajna* and *Rothe*, the Illinois Supreme Court held that a buyer could sue only the seller, not the manufacturer, because privity of contract was required. In those two cases and in *Sienna Court*, the Illinois Supreme Court declined invitations to eliminate the privity requirement for implied warranties. Less than a year ago, in *Sienna*

*Court*, a case involving the implied warranty of habitability, the Illinois Supreme Court reiterated the point, saying:

> The loss that can be recovered under the implied warranty of habitability is for disappointed commercial expectation, *i.e.*, pure economic loss. As such, the implied warranty of habitability must be a creature of contract, not tort. . . . The purchaser of a newly constructed home may not pursue a claim for breach of an implied warranty of habitability against a subcontractor where there is no contractual relationship.

*Sienna Court*, 129 N.E.3d at 1121.

It is no surprise, then, that defendant moves to dismiss plaintiff's implied warranty claims on the grounds that plaintiff is not in privity of contract with defendant, who manufactured the Product but did not sell it to her. Plaintiff has alleged it was TJ Maxx, not defendant, who sold the Product to her. Thus, defendant and plaintiff are not in privity of contract, and plaintiff cannot state a claim for implied warranty.

Nonetheless, plaintiff argues she falls within a "direct-dealing" exception to the privity requirement. She argues she "had direct dealings with Defendant via its advertising and marketing materials" and that she "had a direct relationship with Defendant's retailers, who are Defendant's agents." (Plf. Brief at 11). She argues that such allegations suffice due to the "'fact-intensive nature' of the privity inquiry." (Plf. Brief at 11). For that last proposition, she cites *Matter of L&S Industries, Inc.*, 989 F.2d 929, 932 (7th Cir. 1993), which is inapposite. In that case, the Seventh Circuit was not describing as "fact-intensive" the straight-forward concept of *privity of contract*. *L&S*, 989 F.2d at 932. It was describing privity for purposes of *res judicata*. *Id.* at 932-33 ("Privity is an elusive concept. It is a descriptive term for designating those with a sufficiently close identity of interests. Of course, this definition reveals very little about the kinds of relationships that result in res judicata or, for that matter, the nature of our review. Opinions have varied as to whether privity is a question of fact or a question of law.

This confusion apparently stems from the fact-intensive nature of the inquiry. . . . [T]he legal authority of a party to act on behalf of a non-party in previous litigation may not be easily characterized as factual or legal.") (internal citations omitted). This case is not about *res judicata*, and the *L&S* case has no bearing on this one.

As for the "direct-dealing exception" itself, this Court's job is to predict how the Illinois Supreme Court would decide the issue. *Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015) ("As a federal court sitting in diversity jurisdiction, our task is to predict how the Illinois Supreme Court would decide issues presented here."); *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002) ("[W]e adhere today to the general rule, articulated and applied throughout the United States, that, in determining the content of state law, the federal courts must assume the perspective of the highest court in that state and attempt to ascertain the governing substantive law on the point in question."). This Court is not alone in doubting the Illinois Supreme Court would recognize any exceptions to the requirement of privity for implied warranty claims. *See Caterpillar, Inc. v. Usinor Industeel*, 393 F. Supp.2d 659, 678 (N.D. Ill. 2005) ("[I]t is far from certain that Illinois permits *any* exception to the vertical privity requirement for breach of implied warranty in light of the decisions of the Illinois Supreme Court in *Rothe* [citation omitted] and *Swajna* [citation omitted].").

Much as all roads once led to Rome, the cases that mention a "direct-dealing" exception to the privity requirement under Illinois law seem to trace back to one case, *Rhodes v. Pharmacal Co. v. Continental Can Co.*, 72 Ill.App.2d 362 (1st Dist. 1966). In that case, obviously decided long before *Rothe*, *Swajna* and *Sienna Court*, a plaintiff who purchased aerosol cans attempted to hold the defendant manufacturer liable on an implied warranty theory even though plaintiff had purchased the cans from a distributor. There, plaintiff alleged that its employees had met with

the manufacturer before production to discuss certain design issues. *Rhodes*, 72 Ill.App.2d at 365. The Appellate Court concluded that the buyer could sue the manufacturer on a third-party beneficiary theory, given that the the buyer had worked directly with the manufacturer on product specifications. The Appellate Court stated:

> Since the Uniform Commercial Code, effective in 1962, adopts the third-party beneficiary language in discussing the effect of express and implied warranties, it seems that this doctrine should be extended here to a situation where a seller makes a product for a user who is not a direct buyer, but with whom the seller had *direct dealings*.

*Rhodes*, 72 Ill.App.2d at 372 (emphasis added). Thus, the source of the asserted direct-dealing exception to the privity rule is a case where the Appellate Court held a buyer was a third-party beneficiary of an implied warranty between the manufacturer and the distributor, because the buyer had dealt with the manufacturer directly as to the design of the product.

Three years after *Rhodes*, the Illinois Supreme Court considered *Rozny v. Marnul*, 43 Ill.2d 54 (1969). There, a purchaser of a house tried to enforce an express warranty on a plat of survey provided to the home's previous owner. The Supreme Court noted that it was aware of cases (including *Rhodes*) "which evidence the increasing disregard for the privity requirement through continued expansion of the class of permissible plaintiffs under third-party beneficiary doctrine" but declined to apply the reasoning. *Rozny*, 43 Ill.2d at 60 ("While plaintiffs also invite us to treat this as a third-party beneficiary action and thus permit plaintiffs to sue as the beneficiaries of an express written warranty contract between defendant and the builder, Nash, it is clear that that contract was not made for the direct benefit of the plaintiffs as 'direct benefit' has been traditionally interpreted in connection with third party beneficiary actions."). Instead, the Illinois Supreme Court considered the issue to be one of misrepresentation under tort law. *Rozny*, 43 Ill.2d at 62. *Rozny*, ultimately, became the basis for the exception to the *Moorman*

14

doctrine for negligent misrepresentation by a defendant who is in the business of supplying information. *Moorman*, 91 Ill.2d at 89 (citing *Rozny*, 43 Ill.2d 54).

Although *Rozny* was an express warranty case, the Illinois Supreme Court later said the "holding [in *Rozny*] would a fortiori control where only an implied warranty is claimed." *Altevogt v. Brinkoetter*, 85 Ill.2d 44, 57 (Ill. 1981). In *Altevogt*, the Illinois Supreme Court explained why the buyer could not be thought of as a third-party beneficiary. *Altevogt*, 85 Ill.2d at 58 ("Illinois, as shown by [*Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252 (1931)], holds that a third party is a direct rather than an incidental beneficiary only if the contracting parties have manifested in their contract an intention to confer a benefit upon the third party.").

Subsequently, the Illinois Supreme Court has hammered home the necessity of privity in claims for breach of implied warranty. *Szajna*, 115 Ill.2d at 311 ("We therefore decline to abolish the privity requirement in implied-warranty economic-loss cases."); *Rothe*, 119 Ill.2d at 292 ("the UCC article II implied warranties give a buyer of goods a potential cause of action only against his immediate seller."); *Sienna Court*, 129 N.E.3d at 1121 (no claim for breach of implied warranty "where there is no contractual relationship").

Even if the direct-dealing, third-party beneficiary exception described in *Rhodes* survives, it has no application to plaintiff's claim. She does not allege that defendant manufactured the product to her specifications but sold it to her through a middle man. Rather, plaintiff alleges she picked it up off the shelf at a TJ Maxx. Nor does she allege she was a direct beneficiary of any contract between defendant and TJ Maxx. Under *Rozny* and *Altevogt*, she would be, at best, an incidental beneficiary.

Illinois law requires privity of contract for claims of breach of implied warranty. Plaintiff has not and cannot allege privity of contract between herself and defendant, so she cannot state a claim for breach of implied warranty. Counts III and IV are dismissed with prejudice.

**D.     Breach of express warranty**

In Count II, plaintiff asserts a claim for breach of express warranty. "Express warranties by the seller are created as follows: (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 ILCS 5/2-313.

The Court agrees with defendant that plaintiff has not stated a claim. As plaintiff explains her claim, defendant told consumers the Product "'protect[s] against sunburn,' with no mention of the specific instructions provided on later versions of the product, i.e., the need to shake 'VIGOROUSLY' for at least ten seconds prior to application." (Plf. Brief at 9/Docket 22 at 10). Plaintiff's complaint alleges the quoted language was displayed on defendant's website, which says the Product "helps protect against sunburn." (Complt. ¶ 21). These allegations are insufficient to state a claim for *express* warranty. As plaintiff has alleged her claim, it is not the website language itself that is inaccurate. She does not claim the product failed to help protect against sunburn in any case. Rather, plaintiff alleges the Product does not "help protect against sunburn" unless it is vigorously shaken for ten seconds, a fact defendant omitted. Thus, what plaintiff alleges is an omission, not an actionable affirmation.

Furthermore, plaintiff has not alleged the promise was part of the basis of the bargain. In her complaint, plaintiff does not allege the Product's packaging said it "helps protect against sunburn." Instead, she alleges that language was on defendant's website. (Complt. ¶ 21). The problem, as defendant points out, is that plaintiff has not alleged that she ever saw the statement

16

on the website before making her purchase.  Thus, plaintiff has failed to allege plausibly that the information on defendant's website was part of the basis of the bargain.  *See Felley v. Singleton*, 705 N.E.2d 930, 934 (Ill. App. Ct. 2nd Dist. 1999) ("affirmations of fact made during a bargaining process regarding the sale of goods are presumed to be part of the basis of the bargain").

Finally, even if plaintiff had alleged an actionable affirmation, a claim for breach of express warranty, like a claim for breach of implied warranty, requires privity of contract. *Collins Co., Ltd. v. Carboline Co.*, 125 Ill.2d 498, 516 (Ill. 1988) (noting its decision did not "extend express warranties to nonprivity plaintiffs").  Nonetheless, privity can be found where an express warranty is assigned.  *Collins*, 125 Ill.2d at 507-8 ("[T]he assignee of a warrantee's rights under an express warranty, if the assignment is otherwise valid, succeeds to all those rights and thus stands in privity with the warrantor.").  Plaintiff has not alleged any express warranty was assigned to her.

Accordingly, defendant's motion to dismiss is granted as to plaintiff's claim for breach of express warranty.  Count II is dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court grants defendant's motion to dismiss [13]. The Court dismisses Counts I, III, IV, V and VI with prejudice. The Court dismisses Count II without prejudice. Plaintiff is granted 28 days in which to file an amended complaint should she so choose. This case is set for a status hearing on November 13, 2019 at 9:30 a.m.

**SO ORDERED.**                                              **ENTERED: September 30, 2019**

                                                                             **HON. JORGE ALONSO**
                                                                             **United States District Judge**